RICHARD JOHNSON, ADMINISTRATOR (ESTATE OF ROBERT M. WYSIEKIERSKI), ET AL. *v.* RONALD ATKINSON ET AL.
(SC 17675)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued November 20, 2006—officially released July 24, 2007

*J. Craig Smith*, with whom were *Joshua D. Koskoff* and, on the brief, *Lillian Gustilo*, for the appellants (plaintiffs).

*Kimberly A. Knox*, with whom were *Kenneth J. Bartschi* and, on the brief, *Wesley W. Horton* and *Gary C. Kaisen*, for the appellee (named defendant).

*Opinion*

VERTEFEUILLE, J. The plaintiffs, Richard Johnson, administrator of the estate of Robert M. Wysiekierski (decedent), and Sandryn Taylor-Wysiekierski, the decedent's widow, brought the negligence action underlying this appeal against the defendants, Ronald Atkinson and Rex Lumber Company (Rex Lumber), for the wrongful death of the decedent resulting from the operation of a motor vehicle driven by Atkinson. The decedent and Atkinson were both employees of Rex Lumber. The dispositive issue in this appeal is whether the trial court properly granted Atkinson's motion for summary judgment based on its determination that New Jersey law, and not Connecticut law, applies to the present case.

The plaintiffs claim: (1) that the trial court failed to uphold the law of the case that had been established in a previous summary judgment ruling; and (2) that the trial court applied an improper choice of law analysis. We disagree, and affirm the judgment of the trial court.

The following facts, which were stipulated to in the trial court, are necessary to our resolution of this appeal. Rex Lumber is licensed to do business in both Connecticut and New Jersey. Rex Lumber employed Atkinson in Connecticut and the decedent in New Jersey. In February, 2002, Atkinson drove a tractor trailer from Rex Lumber's millwork facility in Connecticut to the company's lumberyard in New Jersey. Upon arriving in New Jersey, Atkinson observed that the air suspension bags of his trailer were deflated. He reported this information to the decedent, who worked as a mechanic for Rex Lumber. The decedent was underneath the truck inspecting the suspension equipment when Atkinson was instructed by Rex Lumber's drivers' supervisor to move his tractor trailer. Unaware that the decedent was still underneath his vehicle, Atkinson moved it, thereby crushing the decedent.

The record discloses the following relevant procedural history. The decedent's widow, Taylor-Wysiekierski, had received an award of workers' compensation death benefits pursuant to the New Jersey Workmen's Compensation Act, N.J. Stat. Ann. §§ 34:15-1 through 34:15-128. Thereafter, the plaintiffs brought a civil action in Connecticut against the defendants claiming, inter alia, that the decedent's injuries and death had been caused by Atkinson's negligence. Atkinson filed a motion for summary judgment claiming that New Jersey law governed the case and that the present action was barred because the plaintiffs are unable to bring an action against a fellow employee of the decedent under New Jersey's workers' compensation laws. The

motion was denied by the trial court, *Karazin, J.* Thereafter, Atkinson filed a motion to bifurcate the trial. In his motion to bifurcate, Atkinson argued that the trial court should first determine whether New Jersey or Connecticut law applied to the present case before conducting the trial on the remaining issues in the case. The trial court, *Hon. William B. Rush*, judge trial referee, then requested that the parties submit a joint stipulation of facts, which they prepared and later filed with the court. Judge Rush thereafter heard arguments from the parties on Atkinson's bifurcation motion and ruled from the bench that New Jersey law applied to the case and barred the plaintiffs' negligence claims against the defendants. Judge Rush asked the defendants to file additional motions for summary judgment so that the disposition of the choice of law issue could be clarified for purposes of appellate review. Thereafter, he granted those summary judgment motions as to the negligence claims in counts one through four of the plaintiffs' complaint.[1] This appeal followed.[2]

## I

The plaintiffs first claim that in granting Atkinson's motion for summary judgment, Judge Rush failed to apply the law of the case that was established when Judge Karazin had denied Atkinson's previous summary judgment motion. In particular, the plaintiffs claim that the initial summary judgment ruling, in which Judge

---

[1] Counts five and six of the plaintiffs' complaint, alleging wilful and serious misconduct and loss of consortium, proceeded to trial against Rex Lumber only before a jury, which returned a verdict for Rex Lumber. Neither of these claims is precluded by Connecticut's workers' compensation scheme. The verdicts on counts five and six are not at issue in this appeal.

Although the trial court granted separate summary judgment motions filed by Rex Lumber and Atkinson, the plaintiffs appeal only from the trial court's granting of Atkinson's motion.

[2] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we subsequently transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Karazin determined that substantial issues of material fact remained as to the choice of law issues and the appointment of the administrator in Connecticut, was correct. The plaintiffs further claim that granting Atkinson's subsequent summary judgment motion in the absence of new evidence or a recent clarification of the law violated the law of the case doctrine and rendered Judge Rush's ruling improper. We disagree.

The following additional procedural history is necessary to our determination of this issue. After Atkinson's initial summary judgment motion was denied by Judge Karazin based on his determination that material issues of fact as to choice of law remained, Atkinson subsequently filed a motion for reargument and reconsideration as well as a motion for permission to file a second summary judgment motion. These motions were denied by Judge Karazin and Judge Skolnick, respectively. Atkinson argued in his motion for permission to file a second summary judgment motion that any remaining issues of fact had been resolved by deposition testimony that had been obtained after Judge Karazin's decision. In denying Atkinson's motion for permission to file a second summary judgment motion, Judge Skolnick noted that there was "no ground for disturbing [Judge Karazin's] determination that a myriad of technical issues exist in the eventual determination of choice of law as between Connecticut and New Jersey." Thereafter, Judge Rush was assigned to hear the case and to rule on the motion to bifurcate. He requested that the parties submit a joint stipulation of facts. In his subsequent oral ruling, Judge Rush determined that the choice of law issue before the court could be resolved on the basis of the stipulated facts. On the basis of those stipulated facts, the trial court determined that Connecticut did not have a sufficient interest in the employment relationship with the decedent to warrant the application of Connecticut law, and the plaintiffs'

negligence claim against Atkinson therefore was barred in accordance with New Jersey law.

Because application of the law of the case doctrine involves a question of law, our review is plenary. See *Detar* v. *Coast Venture XXVX, Inc.*, 91 Conn. App. 263, 266, 880 A.2d 180 (2005).

We begin our analysis of the plaintiffs' claim with a review of the law of the case doctrine. "In essence [the doctrine] expresses the practice of judges generally to refuse to reopen what [already] has been decided . . . . New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Citations omitted; internal quotation marks omitted.) *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982).

"A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . This principle has been frequently applied to an earlier ruling during the pleading stage of a case . . . . According to the generally accepted view, one judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Citations omitted; internal quotation marks omitted.) Id., 98–99.

This court has determined that although a judge should be hesitant to rule contrary to another judge's ruling, he or she may do so "[n]evertheless, if the case

comes before him [or her] regularly and [the judge] becomes convinced that the view of the law previously applied by [a] coordinate predecessor was clearly erroneous and would work a manifest injustice if followed . . . ." Id., 100. By way of example, this court has noted that "[t]he adoption of a different view of the law by a judge in acting upon a motion for summary judgment than that of his [or her] predecessor . . . is a common illustration of this principle. . . . From the vantage point of an appellate court it would hardly be sensible to reverse a correct ruling by a second judge on the simplistic ground that it departed from the law of the case established by an earlier ruling." (Citations omitted.) Id.

Our review of the record reveals that the circumstances surrounding the rulings by Judge Karazin and Judge Rush were quite different. Judge Karazin's ruling occurred during the pleadings stage of the case when, as he noted, there were many issues of material fact with regard to the choice of law issue. Judge Rush's ruling, on the other hand, came after depositions and other discovery had been conducted, and the parties therefore were able to stipulate to all necessary facts. The outstanding factual disputes that had precluded Judge Karazin from reaching the merits of Atkinson's motion for summary judgment had been resolved by the time the same issue was presented to Judge Rush on the eve of trial. It therefore was proper for Judge Rush to decide the choice of law issue based on facts stipulated to by the parties. Accordingly, we conclude that he did not violate the law of the case doctrine.

II

The plaintiffs next claim that in granting Atkinson's summary judgment motion, Judge Rush improperly determined that New Jersey law applied to the present case and barred the plaintiffs' negligence claims. We

disagree, and, accordingly, we affirm the judgment of the trial court.

Prior to analyzing the plaintiffs' claim in detail, we briefly review the exclusivity provisions contained in both the Connecticut and the New Jersey workers' compensation schemes. Connecticut's Workers' Compensation Act (act), General Statutes § 31-275 et seq., is the exclusive remedy for injuries sustained by an employee "arising out of and in the course of his employment. . . ." General Statutes § 31-284 (a). Under the act's strict liability provisions, workers are compensated without regard to fault. In return for a relatively low burden of proof and expeditious recovery, employees relinquish their right to any common-law tort claim for their injuries. *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 97, 491 A.2d 368 (1985). Generally, then, all rights and claims between employers and employees, or their representatives or dependents, arising out of personal injury or death sustained in the course of employment are abolished as a result of the act's exclusivity bar.

Another provision of the act, General Statutes § 31-293a, creates an exception, however, to the otherwise applicable exclusivity bar. In relevant part, § 31-293a provides that "[i]f an employee . . . has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee *unless* such wrong was wilful or malicious *or the action is based on the fellow employee's negligence in the operation of a motor vehicle. . . ."* (Emphasis added.) As we explained in *Colangelo* v. *Heckelman*, 279 Conn. 177, 183–84, 900 A.2d 1266 (2006), "if an employee suffers injuries, which otherwise would be compensable under the act, due to the negligence of a fellow employee, the injured employee

is barred from recovery against that fellow employee unless the injuries were caused by the fellow employee's negligent operation of a motor vehicle."

New Jersey's workers' compensation law mirrors Connecticut's strict liability system. *Charles Beseler Co. v. O'Gorman & Young, Inc.*, 188 N.J. 542, 546, 911 A.2d 47 (2006) ("[w]e have described the workers' compensation system as an historic trade-off whereby employees relinquish their right to pursue common-law remedies in exchange for prompt and automatic entitlement to benefits for work-related injuries" [internal quotation marks omitted]). New Jersey does not provide, however, a motor vehicle or other applicable negligence exception to its exclusivity bar. See N.J. Stat. Ann. § 34:15-8 (West 2000).[3] Accordingly, if New Jersey law applies to the present case, the plaintiffs are barred from pursuing their negligence claim against Atkinson.

The following additional undisputed facts are necessary to the resolution of this choice of law issue. At the time of the decedent's death, Rex Lumber was licensed to do business in both Connecticut and New Jersey. The company had incorporated its millwork facility in Connecticut in the 1960s and had opened its New Jersey lumberyard in 1971. The company's chief executive officer, Ben Forester, maintained his office in New Jersey. The decedent had been hired by Rex Lumber to work as a mechanic at its Manalapan, New Jersey facility and during the seventeen years that the decedent worked for Rex Lumber, he lived and worked continuously in New Jersey. The decedent performed his daily work activities and duties and was supervised

---

[3] Section 34:15-8 of the New Jersey Statutes Annotated (West 2000) provides in relevant part: "If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong."

in New Jersey at all times during his employment with Rex Lumber. Atkinson, a lifelong resident of Connecticut, held a Connecticut driver's license and worked as a tractor trailer driver for Rex Lumber at the company's South Windsor location, where Rex Lumber maintains its largest lumber mill and generates the majority of its revenues.

"Before commencing our analysis of the [plaintiffs'] claim, we set forth the well established principles that govern our review of the claim. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Colangelo* v. *Heckelman*, supra, 279 Conn. 182.

The plaintiffs rely on *Simaitis* v. *Flood*, 182 Conn. 24, 437 A.2d 828 (1980), to support their contention that Connecticut law, rather than New Jersey law, applies to the present case and permits them to bring the present action. In particular, the plaintiffs claim that *Simaitis* established the choice of law analysis that applies to third party tort actions brought pursuant to § 31-293a, the motor vehicle exception to the exclusivity bar. The plaintiffs claim that a different choice of law analysis applies to workers' compensation claims other than those brought pursuant to § 31-293a, and that the trial court improperly failed to apply the correct choice of

law analysis. In response, Atkinson claims that only one choice of law analysis applies to all workers' compensation cases and claims, and that according to the analysis articulated by this court in *Cleveland* v. *U.S. Printing Ink, Inc.*, 218 Conn. 181, 588 A.2d 194 (1991), and later in *Burse* v. *American International Airways, Inc.*, 262 Conn. 31, 808 A.2d 672 (2002), New Jersey law applies to the present case. We agree with Atkinson.

We begin with a brief review of *Simaitis, Cleveland* and *Burse*. In *Simaitis*, the plaintiff, a resident of Connecticut who had been hired and principally was employed in Connecticut, was injured as a result of a fellow employee's negligent operation of a motor vehicle while the two were on a business trip in Tennessee. *Simaitis* v. *Flood*, supra, 182 Conn. 26. Both parties received Connecticut workers' compensation benefits. Id., 27. The plaintiff then brought a negligence action against her fellow employee under § 31-293a. The defendant claimed that the plaintiff's action was barred by Tennessee law, which did not permit one employee to sue another in negligence for injuries arising within the scope of their employment. Id.

In determining that Connecticut law applied, this court first concluded that neither contract nor tort choice of law analysis should be used to determine which state's laws control. Instead, this court noted that "[t]he proper choice of law rules to apply . . . are the rules traditionally applied to workers' compensation conflicts cases." Id., 31. The court in *Simaitis* then outlined the three traditional approaches to workers' compensation conflict of laws cases: an interest analysis approach, the approach enunciated in 1 Restatement (Second), Conflict of Laws § 181 (1971), and the approach taken by Professor Arthur Larson in his treatise on workers' compensation, 4 A. Larson, Workmen's Compensation Law (1976) § 87.40, pp. 16-84 through 16-95. *Simaitis* v. *Flood*, supra, 182 Conn. 31–34. Because

these approaches all "compelled the same result, it was unnecessary to adopt a comprehensive conflict of laws rule for workers' compensation cases" in *Simaitis*. *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 218 Conn. 191.

In *Cleveland*, this court established a choice of law framework to be used in analyzing conflicts of law in workers' compensation conflicts of law cases. Id., 195. After considering the three approaches detailed in *Simaitis*, this court concluded that "the conflict of laws rule recommended by the [National Commission on State Compensation Laws] and Professor Larson, adopted in the majority of jurisdictions, is the rule best suited to serve the purposes of our [act]." Id., 193. Explaining that conclusion, the court noted that "[t]he remedial purpose of [the act] supports application of its provisions in cases where an injured employee seeks an award of benefits and Connecticut is the place of the injury, the place of the employment contract or the place of the employment relation." Id., 195. Because the plaintiff in *Cleveland* had sustained an employment related injury in Connecticut, we concluded that application of Connecticut's workers' compensation law was appropriate. Id.

In *Burse* v. *American International Airways, Inc.*, supra, 262 Conn. 38–39, we recently refined the framework first set forth in *Cleveland*. The plaintiff in *Burse*, a resident of Connecticut, was injured while working as an airline pilot. Id., 33. While flying a cargo plane for the defendant, he stopped in Michigan so that maintenance personnel could make repairs to the plane. Id., 33–34. In the course of their repairs, maintenance personnel failed to reseal the emergency exit door. As a result, the plane was unable to pressurize properly after take off, and the plaintiff sustained significant injuries. Id., 34.

In *Burse*, we noted that "[i]n *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 218 Conn. 195, this court set forth a three part test to determine when Connecticut workers' compensation law may be applied. Under the *Cleveland* test, the [workers' compensation] commissioner may apply Connecticut law if Connecticut is: (1) the place of the injury; (2) the place of the employment contract; or (3) the place of the employment relation." *Burse* v. *American International Airways, Inc.*, supra, 262 Conn. 38. We then refined the *Cleveland* test. "The facts of [*Cleveland*] did not require us to elaborate on what we meant by 'the place of' in connection with the employment contract or employment relation, and we subsequently have not revisited the choice of law issue in workers' compensation claims. After reviewing the sources on which we relied in *Cleveland*, we now clarify that this test requires, at a minimum, a showing of a *significant* relationship between Connecticut and either the employment contract or the employment relationship." (Emphasis in original.) Id., 38–39. This three part test remains the controlling choice of law analysis for workers' compensation cases and claims in Connecticut.[4]

The plaintiffs' contention that *Simaitis*, and not *Burse* or *Cleveland*, establishes the appropriate choice of law analysis with regard to the present case cannot be supported. Although *Simaitis*, like the present case,

---

[4] The plaintiffs also claim that *Pimental* v. *Cherne Industries, Inc.*, 46 Conn. App. 142, 698 A.2d 361 (1997), confirmed that the holding of *Cleveland* was limited to workers' compensation benefits cases and did not apply to third party tort actions. In *Pimental*, the Appellate Court determined that "*Cleveland* does not address the choice of law to be applied to workers' compensation issues in the context of third party tort actions . . . ." Id., 147. Today, we clarify that the three part significant relationship test outlined first in *Cleveland* and then refined in *Burse* v. *American International Airlines, Inc.*, supra, 262 Conn. 38–39, is the controlling choice of law analysis for all workers' compensation cases and claims in Connecticut. To the extent that *Pimental* conflicts with this determination, we disagree with it.

involved a negligence claim against a fellow employee under § 31-293a, nothing in the language of that case, or of *Burse* or *Cleveland*, suggests that such claims call for a different choice of law analysis from that for workers' compensation claims generally. We view all three cases as part of a continuum culminating in *Burse*, which requires that the plaintiffs in the present case must show a significant relationship between Connecticut and either the decedent's employment contract or his employment relationship. On the basis of the facts stipulated to by the parties, the trial court correctly determined that no relationship existed between Connecticut and either the decedent's employment contract or his employment relationship.[5] Accordingly, we conclude that the trial court properly granted Atkinson's motion for summary judgment.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[5] The first part of the *Burse* test is inapplicable because the parties stipulated to the fact that the injury had occurred in New Jersey. Thus, there is no relationship between Connecticut and the place of the injury.