# STEVEN TESTA *v.* VICKIE GERESSY
## (SC 17970)

Rogers, C. J., and Norcott, Vertefeuille, Zarella and Schaller, Js.

Argued November 19, 2007—officially released April 1, 2008

*Melissa Testa*, with whom was *AnnMarie Alexander*, for the appellant (plaintiff).

*Jane R. Rosenberg*, assistant attorney general, with whom were *Ronald Blanchette*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, for the appellee (state support enforcement services).

NORCOTT, J. This appeal requires us to consider the statutory authority of the office of the attorney general (state) to appear and plead in proceedings before a family support magistrate to enforce a child support order. The plaintiff, Steven Testa, appeals[1] from the judgment of the trial court, *Hon. John R. Caruso*, judge trial referee, denying the plaintiff's appeal from the decision of the family support magistrate, *Harris T. Lifshitz*, which denied the plaintiff's motion to vacate the Connecticut registration of a child support order that originally had been issued in the state of Illinois in 1990 (1990 order), as well as his motion to terminate further proceedings in this action. On appeal, the plaintiff claims that Judge Caruso improperly denied the plaintiff's appeal because: (1) Magistrate Lifshitz lacked authority because exclusive jurisdiction over this matter lay with the trial court until a final determination was made on the merits of the state's[2] appeal from the prior decision of the family support magistrate, *John*

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The attorney general is providing legal services on behalf of support enforcement services in this action, and support enforcement services is, in turn, assisting the defendant, Vickie Geressy, in seeking enforcement of the child support order at issue. See General Statutes § 46b-212t (a) ("[t]he Attorney General shall provide necessary legal services on behalf of the support enforcement agency in providing services to a petitioner under sections 46b-212 to 46b-213v, inclusive"); General Statutes § 46b-231 (t) ("[t]he Attorney General shall . . . [2] [i]n interstate support enforcement under sections 46b-212 to 46b-213v, inclusive, provide necessary legal services on behalf of the support enforcement agency in providing services to a petitioner"); General Statutes § 46b-212a (21) (support enforcement services, as " '[s]upport enforcement agency,' " is authorized "to seek . . . [e]nforcement of support orders or laws relating to the duty of support").

For purposes of clarity, all references to the plaintiff in this opinion are to Testa. All references to the defendant are to Vickie Geressy. Finally, all references to the state are to the attorney general, who is providing legal services for support enforcement services on behalf of the defendant.

*E. Colella;* and (2) Judge Caruso should have overruled the prior conclusion of the trial court, *Prestley, J.,* that the state and support enforcement services have statutory standing to appear and plead in this matter. The plaintiff further contends that Judge Caruso's failure to reach the plaintiff's other claims on appeal from the decision of Magistrate Lifshitz violated the plaintiff's right to remedy by due course of law under article first, § 10, of the constitution of Connecticut.[3] We conclude that Judge Caruso properly declined to disturb Judge Prestley's ruling that: (1) the state has clear statutory authority, pursuant to General Statutes §§ 46b-212t (a)[4] and 46b-231 (t) (2),[5] to provide legal services to support enforcement services in this matter; and (2) support enforcement services has statutory authority, pursuant to General Statutes §§ 46b-212a (21)[6] and 51-1e,[7] to

[3] Article first, § 10, of the constitution of Connecticut provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

[4] General Statutes § 46b-212t (a) provides: "The Attorney General shall provide necessary legal services on behalf of the support enforcement agency in providing services to a petitioner under sections 46b-212 to 46b-213v, inclusive."

[5] General Statutes § 46b-231 (t) provides in relevant part: "The Attorney General shall . . . (2) In interstate support enforcement under sections 46b-212 to 46b-231v, inclusive, provide necessary legal services on behalf of the support enforcement agency in providing services to a petitioner . . . ."

[6] General Statutes § 46b-212a (21) provides: " 'Support enforcement agency' means a public official or agency authorized to seek: (A) Enforcement of support orders or laws relating to the duty of support; (B) establishment or modification of child support; (C) determination of paternity; or (D) the location of obligors or their assets."

[7] General Statutes § 51-1e provides: "The Support Enforcement Division of the judicial branch shall hereafter be known as Support Enforcement Services, which shall be the successor to the Support Enforcement Division and shall assume all the powers, duties and obligations of the Support Enforcement Division and its staff. Notwithstanding any other provision of the general statutes, the duties of the various personnel of the Support Enforcement Division and the staff of the Support Enforcement Division are hereby transferred to Support Enforcement Services, and the Support Enforcement Division is hereby dissolved."

assist the defendant in seeking to enforce the 1990 order. Moreover, although Judge Caruso improperly declined to review the remainder of the plaintiff's claims in his appeal from the decision of Magistrate Lifshitz, we have reviewed those claims in the interest of judicial economy and conclude that they lack merit. Accordingly, we affirm the judgment of the trial court.

The record reveals the following relevant facts and the complicated procedural history of this case. On December 13, 1990, the family division of the Circuit Court for the sixteenth judicial circuit in Kane County, Illinois (Illinois court), obtained a signed admission of paternity, wherein the plaintiff acknowledged being "the father of child Sarah Jean Geressy born to [the defendant] on April 28, 1985." The Illinois court also issued the 1990 order, accompanied by a withholding order, on December 13, 1990. The 1990 order acknowledged that both the plaintiff and the defendant were present in open court, and decreed that the plaintiff: (1) is the father of Sarah Jean Geressy, based on his signed admission of paternity; (2) pay the defendant $62.36 per week for support;[8] (3) is granted visitation privileges; (4) obtain health insurance for the child, through his employer; and (5) send a copy of the health insurance policy and card to the defendant. The 1990 order also acknowledged that the plaintiff "waive[d] service of summons and accept[ed] service of the [p]etition to est[ablish] [p]aternity this date."

The plaintiff was a Connecticut resident at the time the Illinois court issued the 1990 order, and he currently

---

[8] In addition to ordering that the $62.36 child support amount be withheld from the plaintiff's pay per week, the withholding order also mandated that $12.50 be withheld per week "on any delinquency stated in any notice of delinquency served with this order until paid in full."

remains a resident of Connecticut. The defendant was a resident of Illinois when the 1990 order was issued, but she subsequently moved to Indiana. The 1990 order, however, was never registered in Indiana. On December 2, 1993, Judge Larsen of the Illinois court issued an order (1993 order) stating: "Both parties out of state. Clerk relieved of all record keeping and disbursement. Clerk to delete." The 1993 order further decreed that, as of November 30, 1993, the plaintiff owed an arrearage in the amount of $685.96.

In 1996, the defendant, through the Indiana child support division (Indiana support division), unsuccessfully attempted to have Connecticut enforce the 1990 order against the plaintiff. In 1997, the Indiana support division also attempted, on behalf of the defendant, to have the 1990 order registered in Connecticut. On September 4, 1997, a family support magistrate effectively denied the petition for registration because of insufficient service on the plaintiff.

The 1990 order was successfully registered in Connecticut on October 11, 2001, under the Uniform Interstate Family Support Act, General Statutes § 46b-212 et seq. On November 16, 2001, a support services investigator served the plaintiff with the notice of registration[9] at his abode, pursuant to General Statutes §§ 46b-213k

---

[9] The notice of registration listed Illinois as the issuing state of the 1990 order, and Indiana as the state that initiated the 1990 order's registration in Connecticut. See General Statutes § 46b-212a (10) (" '[i]ssuing state' " is "the state in which a tribunal issues a support order or renders a judgment determining paternity"); General Statutes § 46b-212a (8) (" '[i]nitiating state' " is "a state from which a proceeding is forwarded under sections 46b-212 to 46b-213v, inclusive, or a law or procedure substantially similar to said sections, the Uniform Reciprocal Enforcement of Support Act or the Revised Uniform Reciprocal Enforcement of Support Act").

(a)[10] and 52-57 (a).[11] The plaintiff's failure to contest the validity of the registration within twenty days of service confirmed the 1990 order by operation of law. See General Statutes § 46b-213*l*.[12]

On March 2, 2004, the plaintiff filed a pleading entitled, "[Plaintiff's] Motion to Vacate Registration of Foreign Support Order, Connecticut Wage Withholding / Enforcement Order for Support and Connecticut's Enforcement of Foreign State's Arrearage Order" (motion to vacate). On April 15, 2004, a hearing on the motion to vacate was held before Magistrate Colella. During the hearing, Magistrate Colella ordered the plaintiff and the state to file briefs, and he further ordered that the plaintiff's motion to vacate would be treated as a motion to open.

The plaintiff and the state filed briefs dated April 29, 2004, and May 13, 2004, respectively. On September 7, 2004, Magistrate Colella filed a memorandum requesting that both parties allow him to issue his decision beyond the 120 day limit provided by Practice Book

[10] General Statutes § 46b-213k (a) provides: "When a support order or income withholding order issued in another state is registered, the Family Support Magistrate Division or Support Enforcement Services acting on its behalf, shall notify the nonregistering party. Notice must be given by first class, certified or registered mail *or by any means of personal service authorized by the law of this state*. The notice must be accompanied by a copy of the registered order and the documents and relevant information accompanying the order." (Emphasis added.)

[11] General Statutes § 52-57 (a) provides in relevant part: "[P]rocess in any civil action shall be served by leaving a true and attested copy of it . . . with the defendant, or at his usual place of abode, in this state."

[12] General Statutes § 46b-213*l* provides in relevant part: "(a) A nonregistering party seeking to contest the validity or enforcement of a registered order in this state shall request a hearing before the Family Support Magistrate Division within twenty days after the date of mailing or personal service of notice of the registration. . . .

"(b) If the nonregistering party fails to contest the validity or enforcement of the registered order in a timely manner, the order is confirmed by operation of law. . . ."

§ 11-19 (a)[13] because he was still awaiting information that he had requested from Illinois and Indiana, pursuant to General Statutes § 46b-213b.[14] The state declined to waive the 120 day time limit, however, and on September 9, 2004, Magistrate Colella issued a memorandum of decision stating that the "primary question is whether the child support order was terminated at some point in Illinois or Indiana . . . ." Magistrate Colella determined that the briefs submitted by the plaintiff and the state failed to answer this question conclusively, and stated that he still had not received the information that he had requested from Indiana and Illinois prior to the expiration of the 120 day period in which he was obligated to render a decision. Accordingly, Magistrate Colella determined that the evidence was "insufficient to allow the court to conclusively find that a current child support order existed during the entire period in question." He then granted the plaintiff's motion to open, vacated Connecticut's registration of the 1990 order, and terminated any further enforcement of the 1990 order.[15] Magistrate Colella denied the state's subsequent motion for reconsideration.

[13] Practice Book § 11-19 (a) provides in relevant part: "Any judge of the superior court and any judge trial referee to whom a short calendar matter has been submitted for decision, with or without oral argument, shall issue a decision on such matter not later than 120 days from the date of such submission, unless such time limit is waived by the parties. In the event that the judge or referee conducts a hearing on the matter and/or the parties file briefs concerning it, the date of submission for purposes of this section shall be the date the matter is heard or the date the last brief ordered by the court is filed, whichever occurs later. . . ."

[14] General Statutes § 46b-213b provides: "A family support magistrate may communicate with a tribunal of another state in writing, or by telephone or other means, to obtain information concerning the laws of that state, the legal effect of a judgment, decree or order of that tribunal and the status of a proceeding in the other state. A family support magistrate may furnish similar information by similar means to a tribunal of another state."

[15] Magistrate Colella noted, however, that the state "would not be precluded from commencing another registration process, assuming it provides sufficient supporting documentation."

On September 24, 2004, the state appealed from Magistrate Colella's decision to the trial court, pursuant to General Statutes § 46b-231 (n).[16] The plaintiff filed a motion to dismiss the state's appeal on October 6, 2004, in which he argued, inter alia, that both the state and support enforcement services lacked standing to appear and plead in this action, and that the defendant had failed both to plead and appear.

On January 25, 2005, Judge Prestley issued her memorandum of decision on the plaintiff's motion to dismiss the appeal, and rejected the plaintiff's claim that the state and support enforcement services lacked standing. Judge Prestley concluded that the plaintiff's reliance on *Blumenthal* v. *Barnes*, 261 Conn. 434, 804 A.2d 152 (2002), was misplaced because the issue in that case concerned the attorney general's common-law standing to bring an action, while the present case involves his statutory authority to provide legal services. The trial court concluded that, since the state is providing necessary legal services to support enforcement services in seeking to enforce a child support order, pursuant to General Statutes §§ 46b-212a (21) and 46b-212t (a), both the state and support enforcement services have the statutory authority to appear and plead in this action. Judge Prestley further concluded that the state has the authority to plead on the defendant's behalf, and that, pursuant to General Stat-

[16] General Statutes § 46b-231 (n) provides in relevant part: "(1) A person who is aggrieved by a final decision of a family support magistrate is entitled to judicial review by way of appeal under this section.

"(2) Proceedings for such appeal shall be instituted by filing a petition in a superior court for the judicial district in which the decision of the family support magistrate was rendered not later than fourteen days after filing of the final decision . . . .

"(6) The appeal shall be conducted by the Superior Court without a jury and shall be confined to the record and such additional evidence as the Superior Court has permitted to be introduced. . . ."

utes § 46b-213a (a),[17] the defendant "is not required to attend any proceedings on these issues." On the basis of these conclusions, Judge Prestley denied the plaintiff's motion to dismiss.

After she denied the plaintiff's motion to dismiss the appeal, Judge Prestley further determined: "[I]t is clear . . . [that Magistrate Colella] was placed in the untenable position of having to render a decision with an incomplete record. Therefore, this court orders that the cause be remanded for reassignment and that any information available through inquiry made by the family court magistrate or other means vis-á-vis the status of the Illinois and Indiana child support orders be provided to the reviewing magistrate." Thereafter, the case was remanded and reassigned to Magistrate Lifshitz.

On remand, the plaintiff filed a motion to terminate further proceedings (motion to terminate) on March 18, 2005, seeking to terminate the hearing scheduled before Magistrate Lifshitz on March 24, 2005, as well as all other proceedings in this matter. The plaintiff claimed, inter alia, that he had not received notice that an enforceable support order had properly been registered in Connecticut. Specifically, the plaintiff claimed that he had received neither a copy of the 1990 order registered in Connecticut in 2001, nor " 'a sworn statement by the party seeking registration or a certified statement by the custodian of the records showing the amount of any arrearage . . . .' " The plaintiff argued that since he had not received notice of both documents, which are required to register a support order

---

[17] General Statutes § 46b-213a (a) provides: "The physical presence of the petitioner in a responding tribunal of this state is not required for the establishment, enforcement or modification of a support order or the rendition of a judgment determining paternity."

under General Statutes § 46b-213h (a),[18] all further proceedings regarding the 1990 order should be terminated.

The hearing was held as scheduled before Magistrate Lifshitz on March 24, 2005. During the hearing, the plaintiff submitted a document entitled, " 'Miscellaneous Correspondence,' " which was certified by the clerk of the Illinois court, and, in reference to the 1993 order, provides in relevant part: " 'All orders for support in the matter styled *Geressy* v. *Testa* . . . were vacated by Judge Larsen on December 2, 1993 . . . . Illinois has no further orders for child support in connection with these parties.' "

Before issuing a memorandum of decision, however, Magistrate Lifshitz contacted the Illinois court, pursuant to his authority under § 46b-213b; see footnote 14 of this opinion; in an attempt to ascertain whether the 1990 order was still enforceable. Magistrate Lifshitz received two conflicting interpretations from the Illinois court. Specifically, an assistant clerk there informed Magistrate Lifshitz that the 1993 order effectively had "deleted" the 1990 order, such that the 1990 order "had been vacated and no longer existed." The presiding judge of that court, Judge Robert Spence, provided a contrary interpretation, however, and informed Magistrate Lifshitz that he interpreted the 1993 order to mean that "the clerk doesn't have to collect the child support any further," but that "it did

---

[18] General Statutes § 46b-213h (a) provides in relevant part: "A support order or income withholding order of another state may be registered in this state by sending the following documents and information to Support Enforcement Services for filing in the registry of support orders of the Family Support Magistrate Division . . . (2) two copies, including one certified copy, of all orders to be registered, including any modification of an order; (3) a sworn statement by the party seeking registration or a certified statement by the custodian of the records showing the amount of any arrearage . . . ."

not relieve the obligor of his legal obligation to pay the child support."[19]

On April 11, 2005, Magistrate Lifshitz issued a memorandum of decision in accordance with Judge Prestley's remand order. Magistrate Lifshitz determined that Judge Prestley previously had "resolved the [plaintiff's] claims regarding subject matter jurisdiction . . . [and] standing of the [a]ttorney [g]eneral to appear and participate in the case," and that the "sole remaining issue is the [plaintiff's] claim that the underlying order was vacated or terminated by the rendering court, thus invalidating the registration." Magistrate Lifshitz determined that, pursuant to General Statutes § 46b-213j (a),[20] interpretation of the 1990 order and the 1993 order is governed by Illinois law, and he relied on the interpretation of the 1993 order from Judge Spence to conclude that "[t]he 1993 order did not terminate or vacate the child support order. It merely relieved the clerk of the obligation to enforce and monitor the payments." Accordingly, Magistrate Lifshitz issued a decision that: (1) denied the plaintiff's March, 2004 and March, 2005 motions to vacate; (2) decreed that the 1990 order remains in effect, is accorded full faith and credit by Connecticut, and remains the controlling order pursuant to the Uniform Interstate Family Support Act; and (3) ruled that the registration of the 1990 order in Connecticut is valid and remains in effect. Magistrate Lifshitz also ordered the immediate withholding of the plaintiff's income pursuant to the terms of the 1990 order, and ruled that the enforcement of the 1990 order

---

[19] Judge Spence of the Illinois court relayed his interpretation of the 1993 order to Magistrate Lifshitz via voice mail message, which was transcribed and certified by a court reporter. See footnote 30 of this opinion for the full text of the voice mail message.

[20] General Statutes § 46b-213j (a) provides: "The law of the issuing state governs the nature, extent, amount and duration of current payments and other obligations of support and the payment of arrearages under the order."

"shall not be stayed by any subsequent proceedings including any further appeals."

On April 22, 2005, the plaintiff appealed from the decision of Magistrate Lifshitz to the trial court pursuant to § 46b-231 (n). In the appeal petition, the plaintiff claimed, inter alia, that Magistrate Lifshitz improperly: (1) denied the plaintiff's motion to terminate, and therefore "advanc[ed] litigation proceedings against him absent a case in controversy"; (2) held a postjudgment and postappeal evidentiary proceeding in the absence of a petition filed pursuant to General Statutes § 46b-212w;[21] (3) reversed the decision of Magistrate Colella and denied the plaintiff's motion to vacate; and (4) relied on the decision of Judge Prestley, in which the court improperly determined that the state was statutorily authorized to provide legal services on behalf of the defendant.

On November 8, 2005, Judge Caruso denied the plaintiff's appeal without issuing a memorandum of decision. The plaintiff then appealed to the Appellate Court; see General Statutes § 46b-231 (o);[22] and the Appellate

[21] General Statutes § 46b-212w provides: "(a) A petitioner seeking to establish or modify a support order or to determine paternity in a proceeding under sections 46b-212 to 46b-213v, inclusive, must verify the petition. Unless otherwise ordered under section 46b-212x, the petition or accompanying documents must provide, so far as known, the name, residential address and Social Security numbers of the obligor and the obligee, and the name, sex, residential address, Social Security number and date of birth of each child for whom support is sought. The petition must be accompanied by a certified copy of any support order in effect. The petition may include any other information that may assist in locating or identifying the respondent.

"(b) The petition must specify the relief sought. The petition and accompanying documents must conform substantially with the requirements imposed by the forms mandated by federal law for use in cases filed by a support enforcement agency."

[22] General Statutes § 46b-231 (o) provides in relevant part: "Upon final determination of any appeal from a decision of a family support magistrate by the Superior Court, there shall be no right to further review except to the Appellate Court. . . ."

Court granted the plaintiff's motion and ordered the trial court, pursuant to Practice Book § 64-1, to issue a memorandum setting forth the factual and legal basis for its decision. Thereafter, Judge Caruso issued a memorandum of decision stating only that, "in essence, counsel for [the plaintiff] are basing the present appeal from Magistrate Lifshitz on the grounds that his rulings and decision were based on the erroneous decision of Judge Prestley. In effect, they are asking this court to act as an appellate court on another judge's decision. . . . This court is unaware of any authority it has to overturn Judge Prestley's decision." Thereafter, the plaintiff unsuccessfully moved for further articulation of the trial court's memorandum of decision. We subsequently transferred the appeal to this court. See footnote 1 of this opinion.

On appeal, the plaintiff claims that Judge Caruso improperly: (1) denied the plaintiff's appeal from the decision of Magistrate Lifshitz because the trial court retained exclusive appellate jurisdiction over this case until a final determination was made on the merits of the state's appeal from the decision of Magistrate Colella; and (2) failed to overrule Judge Prestley's improper conclusion that the state and support enforcement services have statutory standing to appear and plead in this matter. The plaintiff further claims that Judge Caruso's refusal to consider the plaintiff's claims on appeal from Magistrate Lifshitz' decision violated the plaintiff's right to a remedy by due course of law under article first, § 10, of the Connecticut constitution. We address these claims in turn.

I

A

The plaintiff's first claim is that Judge Caruso improperly denied the plaintiff's appeal because Magistrate Lifshitz lacked authority over this case following the

state's original appeal from Magistrate Colella's decision to Judge Prestley. Specifically, the plaintiff asserts that Judge Prestley's decision, which denied the plaintiff's motion to dismiss the appeal, but also remanded the case back to a family support magistrate, did not reach the merits of, and therefore did not terminate, the state's appeal. Thus, the plaintiff then argues that the denial of his appeal by Judge Caruso was "improper because the Superior Court's exclusive appellate jurisdiction continued until such time as it would make a final determination on the [state's] appeal."

In response, the state claims that Judge Caruso properly denied the plaintiff's appeal pursuant to the doctrine of res judicata. Specifically, the state asserts that both parties briefed and argued the issue of whether the state has statutory authority to provide legal services to the support enforcement services on behalf of the defendant, and that Judge Prestley's determination that the state has such statutory authority was immediately appealable to the Appellate Court pursuant to § 46b-231 (o). The state further asserts that, since Judge Caruso sat in the same appellate capacity as did Judge Prestley, pursuant to § 46b-231 (n), Judge Caruso properly concluded that issue should not be relitigated. In the alternative, the state claims that Judge Caruso properly exercised his discretionary authority to deny the appeal pursuant to the law of the case doctrine.

Judge Caruso denied the plaintiff's appeal because, in Judge Caruso's view: (1) the plaintiff was, in effect, attempting to appeal the decision of Judge Prestley, because the plaintiff "bas[ed] the . . . appeal from Magistrate Lifshitz on the grounds that his rulings and decision were based on the erroneous decision of Judge Prestley"; and (2) the "court is unaware of any authority it has to overturn Judge Prestley's decision." Although Judge Caruso did not articulate the legal basis for why the court was prohibited from revisiting Judge

Prestley's decision, it is clear that the court's decision was founded either upon the doctrine of res judicata or the doctrine of the law of the case. As the application of either doctrine is a question of law, our review of Judge Caruso's decision is plenary. See *Johnson* v. *Atkinson*, 283 Conn. 243, 249, 926 A.2d 656 (2007) ("[b]ecause application of the law of the case doctrine involves a question of law, our review is plenary"); *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 601, 922 A.2d 1073 (2007) ("[t]he applicability of the doctrines of collateral estoppel or res judicata presents a question of law that we review de novo").

We begin with the state's argument that the doctrines of res judicata and the law of the case precluded Judge Caruso from disturbing Judge Prestley's earlier decision in this case. Assuming, without deciding, that Judge Prestley's decision denying the plaintiff's motion to dismiss the appeal, but also remanding the case to the magistrate for further findings, is not a final judgment entitled to preclusive effect under the doctrine of res judicata,[23] we turn to the question of whether Judge Caruso properly declined to revisit this issue under the law of the case doctrine. The law of the case doctrine "expresses the practice of judges generally to refuse to reopen what [already] has been decided . . . . New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. . . . Where a matter has previously been ruled

[23] "The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made." (Internal quotation marks omitted.) *Powell* v. *Infinity Ins. Co.*, supra, 282 Conn. 600.

upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Internal quotation marks omitted.) *Johnson* v. *Atkinson*, supra, 283 Conn. 249. Thus, the question is now whether Judge Caruso properly could have concluded that Judge Prestley correctly decided that: (1) support enforcement services has statutory authority to assist the defendant; and (2) the state has statutory authority to appear and plead in this case.

### B

This brings us to the principal issue in this appeal, and requires us to interpret provisions of both the Uniform Interstate Family Support Act as well as the Family Magistrate Support Act, § 46b-231 et seq. The plaintiff proffers multiple reasons why Judge Prestley improperly determined that the state and support enforcement services have statutory authority to participate in this action. Specifically, the plaintiff asserts that the provisions of §§ 46b-212t and 46b-212a (21) are not ambiguous, and that neither section explicitly provides the state or support enforcement services with statutory standing. The plaintiff further contends that the text of General Statutes §§ 46b-212s (c) and 46b-212t (b) is unambiguous, and those sections preclude the formation of an attorney-client relationship, or any other type of fiduciary relationship, between the state, support enforcement services and the defendant. Finally, the plaintiff relies on *Blumenthal* v. *Barnes*, supra, 261 Conn. 434, and argues that neither the state nor support enforcement services has an interest in the outcome of this action, and, therefore, they lack standing because neither is classically aggrieved.

In response, the state claims that §§ 46b-212t and 46b-212a (21) provide the state and support enforcement

services with clear statutory authority to participate in this action. The state also asserts that *Blumenthal* v. *Barnes*, supra, 261 Conn. 434, is inapposite, because that case dealt with the common-law authority, as opposed to the express statutory authority, of the state to maintain a civil action. We agree with the state.

"Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Citations omitted; internal quotation marks omitted.) *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 401–402, 920 A.2d 1000 (2007).

We begin by examining the language of the relevant statutes. Section 46b-212a (21) provides: " 'Support enforcement agency' means a public official or agency authorized to seek: (A) *Enforcement of support orders or laws relating to the duty of support*; (B) establishment or modification of child support; (C) determination of paternity; or (D) the location of obligors or their assets." (Emphasis added.)

Section 46b-231 (s) provides in relevant part: "Support enforcement officers of Support Enforcement Services of the Superior Court *shall . . . (2) . . . [in] cases under sections 46b-212 to 46b-213v, inclusive, enforce foreign support orders registered with the Family Support Magistrate Division pursuant to sections 46b-213f to 46b-213i, inclusive,* and file agreements for support with the assistant clerk of the Family Support Magistrate Division . . . ." (Emphasis added.)

Further, General Statutes § 46b-213f provides in relevant part: "(a) A party seeking to enforce a support order or an income withholding order, or both, issued by a tribunal of another state may send the documents required for registering the order to Support Enforcement Services.

"(b) Upon receipt of the documents, Support Enforcement Services, with the assistance of the Bureau of Child Support Enforcement within the Department of Social Services, as appropriate . . . *shall* consider and, if appropriate, *use any administrative procedure authorized by the law of this state to enforce a support order or an income withholding order,* or both. . . ." (Emphasis added.)

We conclude that the language of §§ 46b-231 (s) (2) and 46b-213f plainly and unambiguously provides support enforcement services with statutory authorization to assist the defendant in seeking enforcement of the 1990 order. As support enforcement services has statutory authorization to seek enforcement of the 1990 order, we further conclude that support enforcement services constitutes a " '[s]upport enforcement agency' " as defined under the plain language of § 46b-212a (21).

Accordingly, we must now determine whether the state has statutory authority to provide legal services

to support enforcement services, in its attempt to seek enforcement of the 1990 order. Section 46b-212t (a) provides: "The Attorney General shall provide necessary legal services on behalf of the support enforcement agency in providing services to a petitioner under sections 46b-212 to 46b-213v, inclusive." The legislature further emphasized the state's statutory authority in § 46b-231 (t), which provides in relevant part: "The Attorney General shall . . . (2) [i]n interstate support enforcement under sections 46b-212 to 46b-213v, inclusive, provide necessary legal services on behalf of the support enforcement agency in providing services to a petitioner . . . ." We conclude that the unambiguous text of both §§ 46b-212t (a) and 46b-231 (t) (2) gives the state express statutory authority to provide legal services on behalf of support enforcement services in assisting the defendant in this action.

Indeed, our conclusion is buttressed by the relevant state regulations, as § 17b-179(m)-10 (b) of the Regulations of Connecticut State Agencies provides in relevant part: "When Connecticut is the responding state,[24] [support enforcement division, now known as support enforcement services][25] shall: (1) serve as the *support*

---

[24] General Statutes § 46b-212a (17) provides in relevant part: " 'Responding state' means a state in which a proceeding is filed or to which a proceeding is forwarded for filing under sections 46b-212 to 46b-213v, inclusive, or a law or procedure substantially similar to said sections . . . ."

[25] Section 17b-179(a)-1 (17) of the Regulations of Connecticut State Agencies provides: " 'SED' means the Support Enforcement Division within the Connecticut Judicial Branch, an agency under cooperative agreement with BCSE [bureau of child support enforcement] to assist in administering the IV-D program for the State of Connecticut."

Effective October, 2001, the support enforcement division was replaced by support enforcement services, pursuant to General Statutes § 51-1e, which provides: "The Support Enforcement Division of the judicial branch shall hereafter be known as Support Enforcement Services, which shall be the successor to the Support Enforcement Division and shall assume all the powers, duties and obligations of the Support Enforcement Division and its staff. Notwithstanding any other provision of the general statutes, the duties of the various personnel of the Support Enforcement Division and the staff of the Support Enforcement Division are hereby transferred to Support

*enforcement agency* under [the Uniform Interstate Family Support Act] and provide *any necessary services* within the applicable timeframes for the given services which shall include paternity and support obligation establishment, *in conjunction with the [attorney general's office]*,[26] *enforcement of court orders*, and collection and monitoring of support payments . . . ." (Emphasis added.)

The plaintiff claims, however, that §§ 46b-212s (c) and 46b-212t (b) preclude the state from providing legal services in this action. We disagree. Section 46b-212s (c) provides: "The provisions of sections 46b-212 to 46b-213v, inclusive, do not create a relationship of attorney and client or other fiduciary relationship between a support enforcement agency or the attorney for the agency and the individual being assisted by the agency." Section 46b-212t (b) provides: "An individual may employ private counsel to represent the individual in proceedings authorized by sections 46b-212 to 46b-213v, inclusive." We conclude that §§ 46b-212s (c) and 46b-212t (b) do not preclude the state from exercising its express statutory authority to provide legal services under §§ 46b-212t (a) and 46b-231 (t) (2). Specifically, § 46b-212s (c) does not preclude the state from providing legal services to support enforcement services on behalf of the defendant, but, rather, simply precludes the formation of an attorney-client relationship, or any other type of fiduciary relationship, between the state or support enforcement services and the defendant. Put differently, although support enforcement services may assist the defendant in seeking enforcement of the 1990

Enforcement Services, and the Support Enforcement Division is hereby dissolved."

[26] Section 17b-179(a)-1 (1) of the Regulations of Connecticut State Agencies provides: " 'AGO' means the Connecticut Attorney General's office, or any assistant attorney general within such office who is responsible for performing any IV-D function in accordance with the cooperative agreement between the department and such office."

order, and although the state may provide legal services to support enforcement services in assisting the defendant, neither the state, support enforcement services nor the defendant enjoy any of the rights, privileges or obligations attendant to an attorney-client or other fiduciary relationship. Further, although § 46b-212t (b) gives the defendant the right to elect to be represented by private counsel in her attempt to secure enforcement of the 1990 order, it in no way affects the statutory authority of either the state or support enforcement services.

Finally, we disagree with the plaintiff's reliance on *Blumenthal* v. *Barnes*, supra, 261 Conn. 434, because that case affects neither the statutory authority of support enforcement services to assist the defendant, nor the statutory authority of the state to provide legal services to support enforcement services. The plaintiff's reliance on *Blumenthal* for the proposition that the state and support enforcement services lack standing because neither are classically aggrieved—pursuant to the plaintiff's assertion that neither have an interest in the outcome of this action—is misplaced, because in *Blumenthal*, we stated: "Standing is established by showing that the party claiming it is *authorized by statute* to bring suit *or* is classically aggrieved."[27] (Emphasis added; internal quotation marks omitted.) Id., 441–42. Thus, if a party is statutorily authorized to bring suit, that same party need not be "classically aggrieved" in order to have standing.

As we have concluded that support enforcement services has statutory authority to assist the defendant in

---

[27] In *Blumenthal* v. *Barnes*, supra, 261 Conn. 441, we were concerned solely with an issue of classical agreement, namely, "whether the attorney general has standing under common law to bring an action for breach of fiduciary duties by officers of a not-for-profit organization . . . ." Indeed, we explicitly stated that the case did "not address whether the attorney general has *statutory authority* to . . . bring an action against a fiduciary . . . ." (Emphasis added.) Id.

seeking to enforce the 1990 order, and the state has statutory authority to provide legal services to support enforcement services in assisting the defendant, we further conclude that Judge Caruso properly declined to disturb Judge Prestley's conclusion to that effect.

## II

We next examine whether Judge Caruso properly denied the plaintiff's appeal with respect to the plaintiff's remaining claims, which assert that Magistrate Lifshitz improperly: (1) held a postjudgment and postappeal evidentiary proceeding in the absence of a petition filed pursuant to § 46b-212w;[28] (2) reversed the decision of Magistrate Colella and denied the plaintiff's March, 2004 motion to vacate; and (3) denied the plaintiff's March, 2005 motion to terminate.

## A

We initially must decide whether Judge Caruso properly declined to address these claims on the ground that Judge Prestley had issued an order remanding the case back to the family magistrate division, after determining that the record was inadequate for appellate review.

We conclude that Judge Caruso improperly refused to review the plaintiff's remaining claims because Judge Prestley never, at any time, ruled on the merits of those claims. Put differently, the proceedings before Judge Caruso were the plaintiff's first opportunity for review of these claims by the Superior Court, and Judge Prestley's decision did not allow Judge Caruso to decline to review them in the first instance pursuant to § 46b-231 (n). See footnote 16 of this opinion.

Judge Caruso's failure to review the plaintiff's claims ordinarily would require a remand to the trial court for

---

[28] See footnote 21 of this opinion.

a review of these claims in the first instance. The record on appeal, however, is adequate for review of the plaintiff's remaining claims because: (1) both parties have briefed the remaining claims; and (2) each claim is subject to plenary review. Thus, in addition to addressing the plaintiff's claim that the trial court's failure to review these claims denied him his right to a "remedy by due course of law" pursuant to article first, § 10, of the Connecticut constitution, "we conclude that a final resolution of the [plaintiff's] appeal will best serve the interests of judicial economy." (Internal quotation marks omitted.) *Collins* v. *Anthem Health Plans, Inc.*, 275 Conn. 309, 332, 880 A.2d 106 (2005); see also *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 216 Conn. 627, 639, 583 A.2d 906 (1990) ("because the administrative record before us on appeal is identical to that which was before the trial court, the interests of judicial economy would not be served by a remand in this case"). Accordingly, we review each of the plaintiff's remaining claims in turn.

B

We start with the plaintiff's claim that no case or controversy existed after the issuance of Judge Prestley's remand order, and that Magistrate Lifshitz, therefore, improperly held a postjudgment and postappeal evidentiary proceeding in the absence of a petition filed pursuant to § 46b-212w. Because resolution of the claim involves the interpretation of statutory provisions, our review is plenary. *Alvord Investment, LLC* v. *Zoning Board of Appeals*, supra, 282 Conn. 401. Accordingly, we start with the language of the relevant statutes.

Section 46b-212w provides: "(a) A petitioner seeking to establish or modify a support order or to determine paternity in a proceeding under sections 46b-212 to 46b-213v, inclusive, must verify the petition. Unless other-

wise ordered under section 46b-212x, the petition or accompanying documents must provide, so far as known, the name, residential address and Social Security numbers of the obligor and the obligee, and the name, sex, residential address, Social Security number and date of birth of each child for whom support is sought. The petition must be accompanied by a certified copy of any support order in effect. The petition may include any other information that may assist in locating or identifying the respondent.

"(b) The petition must specify the relief sought. The petition and accompanying documents must conform substantially with the requirements imposed by the forms mandated by federal law for use in cases filed by a support enforcement agency."

Section 46b-212w cannot be read in isolation, and must be considered along with § 46b-231 (n) (7), which provides in relevant part: "The Superior Court may affirm the decision of the family support magistrate *or remand the case for further proceedings. . . .*" (Emphasis added.) The plaintiff concedes in his brief that a " 'court having appellate jurisdiction' may 'remand any pending matter to the trial court for the resolution of factual issues where necessary,' " yet also claims that the remand in this case somehow terminated the case and controversy entirely. Such an interpretation is entirely inconsistent with the plain language of § 46b-231 (n) (7), because it would render superfluous the trial court's clear statutory authority to remand when reviewing a decision of a family support magistrate. See, e.g., *Small* v. *Going Forward, Inc.*, 281 Conn. 417, 424, 915 A.2d 298 (2007) ("[i]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous" [internal quotation marks omitted]). Accordingly, we conclude that Judge Prestley's remand order did not end the case or contro-

versy between the plaintiff and the defendant. We further conclude, therefore, that no additional petition needed to be filed under § 46b-212w in order for Magistrate Lifshitz to make additional factual findings on remand. Indeed, the express purpose of Judge Prestley's remand order was to rectify the problems caused when Magistrate Colella was forced to render a decision on an inadequate record.

## C

The plaintiff next claims that Magistrate Lifshitz improperly determined that the 1990 order is valid and enforceable, and, therefore, reversed the decision of Magistrate Colella to the contrary. The gravamen of the plaintiff's claim is that the decision of Magistrate Lifshitz lacks factual support in the record. We disagree, and conclude that Magistrate Lifshitz properly determined that the 1990 order is valid and enforceable.

The record reveals the following facts and procedural history relevant to this claim. The plaintiff claims that the 1990 order was vacated by the 1993 order, which states: "Both parties out of state. Clerk relieved of all record keeping and disbursement. Clerk to delete." During the hearing before Magistrate Lifshitz on March 24, 2005, the plaintiff also proffered a document entitled, "Miscellaneous Correspondence," which was certified by the clerk of the Illinois court, and which provides in part: "All orders for support in the matter styled *Geressy* v. *Testa* . . . were vacated by Judge Larsen on December 2, 1993 . . . . Illinois has no further orders for child support in connection with these parties."

Pursuant to the court's authority under § 46b-213b,[29] however, Magistrate Lifshitz contacted the Illinois court directly in an attempt to ascertain whether the 1990

---

[29] See footnote 14 of this opinion.

order had, in fact, been vacated by the 1993 order. In response to Magistrate Lifshitz' request for information, Judge Spence left a voice mail message for him.[30] In the voice mail, Judge Spence informed Magistrate Lifshitz that, based upon his experience and the operating procedures of the Illinois court, the 1993 order simply directed that "the clerk doesn't have to collect the child support any further," and "did not relieve [the plaintiff] of his legal obligation to pay the child support." Magistrate Lifshitz then relied on § 46b-213j (a),[31] which provides that it is the duty of the Illinois court to interpret the 1990 order and the 1993 order, and determined that the "interpretation of Illinois law is propounded not by the court clerk, but [by] the judges of the court." Magistrate Lifshitz subsequently concluded: "The 1993 order did not terminate or vacate the [1990] child sup-

---

[30] The text of Judge Spence's voice mail message to Magistrate Lifshitz, which has been transcribed and certified by a court reporter, provides as follows:

"Hello. This message is for Mr. Lifshitz. My name is Bob Spence. I'm the presiding judge of the family division in our court here in Kane County, Illinois. I'm looking at the file that you previously mentioned in a voice mail that I had from you, I believe.

"And I see a 1993 order relieving the clerk of the obligation to collect any support. The way we would normally—and I don't know if this is what you're asking for or not, but the way we would normally interpret that here is, I think just as stated, that the clerk doesn't have to collect the child support any further. However, it did not relieve the obligor of his legal obligation to pay the child support. I would never make that interpretation short of something that says exactly that, that the child support is terminated or abated or something. Those are the two terms that we commonly use here, that the child support is abated from this date on or effective a certain date or terminated.

"Short of something in that nature, I wouldn't be taking the position here that there is no longer an obligation to pay, just that our clerk, who is overworked and may not be able to keep accurate records of it anyway, that they're not obligated any longer to try to collect it.

"So I don't know if that answers your question or not. If you need any more of this file, please let me know. I've got the whole file here. I could fax it to you or whatever.

"My number here is . . . . Thanks a lot. Bye."
[31] See footnote 20 of this opinion.

port order. It merely relieved the clerk of the obligation to enforce and monitor the payments." Magistrate Lifshitz then denied the plaintiff's motion to vacate, which effectively overruled Magistrate Colella's earlier decision.

We start with the appropriate standard of review. Magistrate Lifshitz' determination that the 1990 order is valid was based upon his factual findings, and, thus, review of whether that conclusion was proper presents a mixed question of fact and law. Accordingly, we review Magistrate Lifshitz' factual findings for clear error, but review de novo his legal determination that the 1990 order is valid and enforceable. *Kelo* v. *New London*, 268 Conn. 1, 158–59, 843 A.2d 500 (2004) (*Zarella, J.*, concurring and dissenting), aff'd, 545 U.S. 469, 125 S. Ct. 2655, 162 L. Ed. 2d 439 (2005). The clearly erroneous standard of review provides that "[a] court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Considine* v. *Waterbury*, 279 Conn. 830, 858, 905 A.2d 70 (2006).

Upon review of Magistrate Lifshitz' conclusion, we are not "left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) Id. We conclude, therefore, that Magistrate Lifshitz' determination that the 1993 order did not vacate the 1990 order, based upon the interpretation of the orders by a judge of the Illinois court, was not clearly erroneous. Accordingly, we also conclude that Magistrate Lifshitz properly denied the plaintiff's motion to terminate the proceedings.

Finally, as stated previously, our review of the plaintiff's claims on appeal to this court, as well as his claims

asserted in his appeal petition from the decision of Magistrate Lifshitz, renders moot the plaintiff's claim that Judge Caruso's summary denial of the plaintiff's appeal violated his right to a remedy by due course of law under article first, § 10, of the Connecticut constitution.

The judgment is affirmed.

In this opinion the other justices concurred.