STATE OF CONNECTICUT *v.* CHRISTOPHER R.
GONSALVES
(AC 32375)

Robinson, Alvord and Schaller, Js.

Argued February 1—officially released July 31, 2012

*Gwendolyn S. Bishop*, special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Charles W. Johnson*, assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Christopher R. Gonsalves, appeals from the judgment of conviction, rendered after a trial by jury, of misconduct with a motor vehicle in violation of General Statutes § 53a-57 (a)[1] and reckless driving in violation of General Statutes § 14-222 (a).[2] On appeal, the defendant claims that (1) the evidence was insufficient to support a conviction on the charge of misconduct with a motor vehicle and (2) the trial court improperly admitted evidence of the defendant's driving prior to the accident, specifically that he did a "donut" in a school parking lot shortly before turning onto the road where the accident occurred. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's claims. On December 2, 2007, Zachary Choquette, William Siter and Peter Chase visited the defendant at his home on Route 316 in the town of Hebron.[3] The weather that

---

[1] General Statutes § 53a-57 (a) provides: "A person is guilty of misconduct with a motor vehicle when, with criminal negligence in the operation of a motor vehicle, he causes the death of another person."

[2] General Statutes § 14-222 (a) provides in relevant part: "No person shall operate any motor vehicle upon any public highway of the state . . . recklessly, having regard to the width, traffic . . . and the weather conditions. The operation of a motor vehicle upon any such highway . . . at such a rate of speed as to endanger the life of any person other than the operator of such motor vehicle . . . shall constitute a violation of the provisions of this section. . . ."

[3] On that date, the defendant and Siter were seventeen years old and Choquette and Chase were eighteen years old.

day was inclement, with precipitation in the form of snow and freezing rain. At about 5:30 p.m., the four decided to travel to the town of Andover in the defendant's Ford F-350 pickup truck to purchase food. The defendant was operating the vehicle, Siter was seated in the front passenger seat and Choquette and Chase were seated in the rear passenger seats. After visiting a restaurant, the four went to the unplowed parking lot of a local school, and did a "donut" around a light pole.[4]

Shortly thereafter, the defendant began driving southbound on Route 316 in order to return home. The segment of road on which the defendant was traveling had one lane of travel in each direction, a posted speed limit of forty-five miles per hour and did not permit passing. Directly in front of the defendant in the southbound lane was a vehicle traveling at a speed between thirty-five and forty miles per hour. After following behind this vehicle for a short period of time, the defendant accelerated, crossed a double yellow line into the northbound lane and attempted to pass the slower vehicle. Before the defendant could cross back into the southbound lane, he lost control of his vehicle and veered off the left hand side of the road. The defendant's vehicle struck a rock and traveled fifty-four and one-half feet through the air before rolling over and coming to rest in the middle of the road. During the accident, Choquette and Chase were ejected from the vehicle.[5] Choquette, who was found unconscious several feet off of the road, sustained injuries to his head and died the following day. Chase sustained nonfatal injuries to his

---

[4] On direct examination, Chase described a "donut" as follows: "If there's like snow on the ground, you pull in, you turn one way, and then you just gas it a little bit and the tires spin which causes the truck to spin and it just like kicks out, I guess, the rear end slides out."

[5] John Guari, an accident investigator for the Connecticut state police, testified at trial that the passengers in the backseat of the defendant's vehicle probably were not wearing seat belts at the time of the accident.

head, resulting in periodic spells of dizziness. Siter sustained compression fractures of two thoracic vertebrae. The defendant sustained cervical strain and an abrasion on his leg.

The defendant was arrested and charged with one count of manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1),[6] two counts of assault in the third degree in violation of General Statutes § 53a-61 (a) (2)[7] and one count of reckless driving in violation of § 14-222 (a). As an alternative to manslaughter in the second degree, the court charged the jury with the lesser included offenses of misconduct with a motor vehicle in violation of § 53a-57 (a) and negligent homicide with a motor vehicle in violation of General Statutes § 14-222a.[8]

On January 19, 2010, the jury found the defendant not guilty of manslaughter in the second degree and not guilty on both counts of assault in the third degree, but guilty of misconduct with a motor vehicle and reckless driving. On March 18, 2010, the trial court imposed a total effective sentence of five years incarceration, execution suspended after sixteen months, and five years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant's first claim is that the state failed to produce evidence that he exceeded the speed limit and

[6] General Statutes § 53a-56 (a) provides in relevant part: "A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

[7] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when . . . (2) he recklessly causes serious physical injury to another person . . . ."

[8] General Statutes § 14-222a (a) provides in relevant part: "[A]ny person who, in consequence of the negligent operation of a motor vehicle, causes the death of another person shall be fined not more than one thousand dollars or imprisoned not more than six months or both."

that, as a result, there was insufficient evidence to establish the mental state of criminal negligence required for conviction of misconduct with a motor vehicle. We disagree.

The following evidence was presented at trial regarding the speed of the defendant's vehicle. Richard Long, Jr., an occupant in the vehicle that the defendant passed, testified that his vehicle was traveling between thirty-five and forty miles per hour. Long also testified that he "could tell [that the defendant's truck] was accelerating [because he] could hear the engine" and that the defendant's vehicle passed "quickly." The state's expert witness, John Guari, testified that his review of the physical evidence left at the scene of the accident indicated that the defendant's vehicle must have been traveling at least twenty-six to thirty-three miles per hour at the moment it began to leave "furrow marks."[9] Guari testified that this conclusion was a "minimum speed estimate" and that, in fact, the defendant's vehicle could have been traveling faster. Moreover, Guari noted that this estimate pertained only to the speed of the defendant's vehicle during the creation of the "furrow marks" and he did not, therefore, estimate the speed of the defendant's vehicle while passing the other vehicle. Finally, in his statement to police after the accident, the defendant estimated that he was traveling at a speed between forty and forty-five miles per hour.

We begin our analysis by setting forth the applicable standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon

---

[9] Guari noted during his testimony that "furrow marks" is a term used to refer to markings on the ground "caused by any portion of the vehicle . . . which is solid, not moving, not rotating, so it's like pushing through and causing for lack of a better term, a furrow like a . . . like a farmer would make with his plow." Guari testified that such marks can be caused by "a locked or nonrotating tire."

the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Butler*, 296 Conn. 62, 76–77, 993 A.2d 970 (2010).

Section 53a-57 (a) provides: "A person is guilty of misconduct with a motor vehicle when, with criminal

negligence in the operation of a motor vehicle, he causes the death of another person." Thus, "[c]onviction of misconduct with a motor vehicle requires proof of the mental state involved in criminal negligence . . . ." (Internal quotation marks omitted.) *State* v. *Ortiz*, 29 Conn. App. 825, 833, 618 A.2d 547 (1993). General Statutes § 53a-3 (14) provides that "[a] person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation . . . ."

Our decision in *State* v. *Carter*, 64 Conn. App. 631, 781 A.2d 376, cert. denied, 258 Conn. 914, 782 A.2d 1247 (2001), demonstrates that a defendant need not be speeding in order to violate § 53a-57 (a). In *Carter*, the defendant was convicted of misconduct with a motor vehicle for veering out of his lane onto the shoulder of a highway and killing a motorist who was standing next to a disabled vehicle. Id., 632–34. In that case, the defendant's erratic driving occurred when he lost visual contact with the road.[10] Id., 635. In concluding that the evidence presented at trial was sufficient to support a conviction of misconduct with a motor vehicle, this court explicitly noted that "[t]he defendant was traveling at a normal rate of speed." Id., 634.

In the present case, the record contains ample evidence that the defendant acted in a criminally negligent manner. The defendant crossed a double yellow line

[10] In *Carter*, the evidence presented at trial indicated that the defendant's erratic driving occurred because he was "working on something under the dash or had fallen asleep." *State* v. *Carter*, supra, 64 Conn. App. 640. This court noted, however, that the distinction between these two causes was "of little consequence to [the] analysis." Id.

on a narrow road while driving, by his own estimation, at a speed of at least forty miles per hour. The defendant took this action despite the fact that driving conditions that night were exceedingly poor. Given the cumulative impact of these undisputed facts, a jury reasonably could have concluded that the defendant failed to perceive a substantial and unjustifiable risk of causing the death of another person and that this failure represented a gross deviation from the standard of care that a reasonable person would have observed in the situation. As in *Carter*, the absence of evidence of speeding is not dispositive. Consequently, we conclude that the evidence contained within the record is sufficient to support the defendant's conviction of misconduct with a motor vehicle.

II

The defendant's second claim is that the trial court improperly admitted evidence of the defendant's driving prior to the accident, specifically, that the defendant did a "donut" in a school parking lot shortly before turning onto the road where the accident occurred. We disagree.

The following additional facts are relevant to our resolution of this claim. On January 11, 2010, the defendant filed a motion in limine seeking the exclusion of "any evidence or statement pertaining to the driving of the . . . defendant prior to December 2, 2007 at approximately 6:30 p.m." Specifically, the defendant argued that such evidence would "not fall within any recognized exception to the admission of uncharged misconduct, and would be unduly prejudicial to the defendant." On January 12, 2010, the parties agreed that the court could reserve its ruling on the motion until the state sought the admission of such evidence at trial.

On January 13, 2010, the state called Chase as a witness. Outside the presence of the jury, the defendant's

attorney argued: "I'd like to be heard very briefly about what we were discussing the other day with respect to my motion in limine . . . in looking at this young man's, Peter Chase, written statement, I assume that he is going to testify that prior to the accident . . . [the defendant], Peter Chase . . . and the two other young men, went to a school parking lot and were doing donuts . . . ." The defense continued: "[M]y objection is as to relevance and his state of mind, whether it be reckless, negligent or neither, at the time of the accident is totally separate from what he may have or may not have been doing in this lot . . . . And certainly . . . the potential prejudice far outweighs any probative value that it might have. The prejudice is, clearly, is that a jury might conclude that, well, because he drove and he was doing donuts or whatever kids are doing in terms of skidding around in the snow, is reflective of what his conduct was sometime later. For that reason I object."

To this objection, the state responded: "I expect that the witness will testify that approximately ten minutes before the accident they did pull into an elementary school parking lot for the purpose of doing donut[s], did a donut, and that I'm offering that through the witness. It is relevant. The reason being that the mental state of recklessness requires that the defendant be aware of and consciously disregard a substantial and unjustifiable risk; the fact that he did a donut in that school parking lot shows that he is aware that the driving conditions are compromised and that that is part of his mental state. Also this occurred just minutes before the accident; it's entirely probative of his mental state in the seconds just before the accident and during the accident. So, for that reason I'm offering it."

The court then denied the defendant's motion in limine, stating: "My ruling might be different if he had done something like this six months earlier, but I agree

with [the state] . . . what happened a matter of minutes before the actual incident is part and parcel of the incident itself. It does reflect the consciousness of what the driving conditions were, it reflects an appreciation of the driving conditions as well, the road surfaces, that they were slippery under the circumstances and I think that all of that goes into the determination of whether he disregarded the risks associated with those conditions. So, I am going to allow it and to that extent of your motion in limine, the motion is denied." Shortly after this ruling, Chase testified in the presence of the jury that, on the way back from Andover the defendant drove into the parking lot of a local school and "did a donut" around a light pole. Chase's testimony indicates that this conduct occurred approximately ten to fifteen minutes before the accident.

We begin our analysis of the defendant's evidentiary claim by setting forth the relevant standard of review. "We review the trial court's decision to admit evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Coccomo*, 302 Conn. 664, 707, 31 A.3d 1012 (2011). "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did." (Internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 11, 1 A.3d 76 (2010).

The defendant's principal argument in support of this claim is that Chase's testimony regarding the incident in the parking lot constituted evidence of prior uncharged misconduct and should not have been admitted for the purpose of showing that he was operating his car in a reckless manner in the moments before the accident. We are not persuaded. In its ruling on the defendant's

motion in limine, the trial court clearly stated that it was admitting Chase's testimony as relevant evidence rather than as evidence of uncharged misconduct. Specifically, the court noted that this event was "part and parcel" of the incident that gave rise to the accident. The facts set forth above demonstrate that the events that occurred in the school parking lot took place not only during the same storm, but during the same outing with the same vehicle and the same occupants. Moreover, the event took place only fifteen minutes before the accident itself. In light of these facts and our duty to make every reasonable presumption in favor of upholding the trial court's ruling, we conclude that the trial court's determination that Chase's testimony did not relate to an instance of prior uncharged misconduct does not constitute an abuse of discretion.

The defendant also argues that Chase's testimony on this point was not relevant to the issues in the case. We are not persuaded. The term "relevant evidence" means "evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-2. As the trial court noted, the evidence proffered by the state, including Chase's testimony, indicates that the defendant was aware of the slippery road conditions that decreased his vehicle's traction on the road. Because proof of such awareness is necessary to demonstrate recklessness; see General Statutes § 53a-3 (13); the trial court did not abuse its discretion in concluding that Chase's testimony on this point was relevant.[11]

---

[11] The defendant was charged with three crimes requiring a mental state of recklessness: reckless driving, manslaughter in the second degree and assault in the third degree. See General Statutes §§ 14-222, 53a-56 (a) (1) and 53a-61 (a) (2). As noted previously, the jury found that the defendant was not guilty of the charges of manslaughter in the second degree and assault in the third degree.

Finally, the defendant argues that the evidence as to the defendant's driving prior to the accident should not have been admitted because its probative value was outweighed by the danger of undue prejudice. We are not persuaded. Section 4-3 of the Connecticut Code of Evidence provides in relevant part: "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." The defendant's sole argument on the question of unfair prejudice is that the jury improperly could have inferred that he was operating his vehicle with the same mental state on Route 316 as he was in the school parking lot.[12] Although such an inference would likely be damaging to the defendant, prejudice alone is insufficient to warrant exclusion of the evidence proffered by the state. See *State* v. *Bell*, 303 Conn. 246, 273, 33 A.3d 167 (2011) ("[o]f course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted" [internal quotation marks omitted]). We conclude that the trial court did not abuse its discretion in ruling that the probative value of the challenged evidence was not outweighed by the danger of undue prejudice.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] We note that, although the trial court appeared to admit Chase's testimony for the limited purpose of demonstrating the defendant's knowledge of road conditions that day, the defendant did not seek an instruction limiting the jury's consideration of Chase's testimony to that issue. Even if this court was to assume that Chase's testimony should have been inadmissible as circumstantial evidence of the defendant's mental state at the time of the accident, any prejudicial effect would have been mitigated by such an instruction.